UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BENJAMIN J. BARTLETT, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 16-CV-1185 |
| ) | |
| OVID WINANS and ) | |
| JEANENE PAYNE, ) | |
| ) | |
|     Defendants. ) | |

**OPINION**

Plaintiff asserts that, during his detention in the McLean County Detention Center in the Fall of 2015, he contracted an infection in his fingers and thumbs after using dirty nail clippers. He proceeds on two claims: (1) Defendant Winans, the Operations Supervisor at the Jail, was deliberately indifferent to the risk of disease or infection posed by the McLean County Jail's alleged practice of not disinfecting nail clippers after each use; and (2) Defendant Payne, a nurse and the Supervisor of the Jail's Health Services, was deliberately indifferent to Plaintiff's need for treatment for his infection. (9/15/16 Merit Review Order.)

Defendants move for summary judgment, which is granted for the reasons below.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

**Facts**

Plaintiff was detained in the McLean County Detention Facility ("Jail") from August 19, 2015 to April 19, 2016.[1] Defendant Winans was the Operations Supervisor at the Jail. Defendant Payne was a registered nurse and the Supervisor of the Jail's Health Services.

The Jail kept two pairs of nail clippers for use by detainees upon request. (Winans Aff. ¶ 58.) During Plaintiff's prior detentions at the Jail, he would use the Jail's nail clippers if his request for cleaning solution for the clippers was granted. Generally, Plaintiff would clean the clippers with an alcohol pad if provided. If no alcohol pad or other cleaning solution was provided, he would not use the clippers. (Pl.'s Dep. 57, 61-62.) Plaintiff does not dispute that Clorox disinfectant wipes or alcohol pads were generally, or supposed to be, available to wipe down the clippers upon request by a detainee. (Winans Aff ¶ 9.)

---

[1] Plaintiff is now incarcerated in the Illinois Department of Corrections.

October 1-2, 2015, was different. Plaintiff asked an unidentified officer on October 1 for cleaning solution for the clippers, but the officer denied the request. Plaintiff's understanding was that the officer contacted the health care unit to ask about the cleaning solution, and whoever the officer talked to stated that there was no cleaning solution. (Pl.'s Dep. 64-67.) These understandings are based on inadmissible hearsay, but, in any event the purported conversation between the officer and health care is immaterial for purposes of this order. Plaintiff offers no evidence to dispute Defendants' averments that they were not involved in Plaintiff's requests regarding the nail clippers on October 1 or the next day. (Winans Aff. ¶ ; Payne Aff. ¶¶ 76-78.) On October 1, Plaintiff asked to speak to someone higher up, but was eventually told by the unknown officer that they were too busy to worry about nail clippers. (Pl.'s Dep. 69.) Plaintiff did not use the clippers that day.

Plaintiff tried again the next day—October 2, 2015—asking another unknown officer for nail clippers and something to clean them with. The officer gave Plaintiff the clippers, but the clippers were dirty with what looked like rust and possibly blood. (Pl.'s Dep.

72.) In response to Plaintiff's request for some kind of cleaning solution, the officer replied, "[L]eave crying to babies. Just be a man, go in your cell and just rinse them off with warm water and dry them off with a paper towel, little bit of stuff ain't going to hurt you, you know, you'll be all right." (Pl.'s Dep. 72-73.)

Plaintiff proceeded to use the clippers to cut his fingernails after rinsing the clippers in the sink. Soap was available but he does not remember whether he used the soap to clean the clippers. (Pl.'s Dep. 81.) In trying to cut out hangnails, Plaintiff cut some of his skin. (Pl.'s Dep. 85.) A few hours later, Plaintiff's cuticles began to swell, burn, and turn a "red kind of real light blue color," according to Plaintiff. (Pl.'s Dep. 85-86.)

Plaintiff says that he began submitting requests slips to see a nurse or doctor for what he suspected was an infection in his fingers and thumbs. Accepting Plaintiff's account, he sent daily requests beginning on October 2 through October 7, but got no responses. (Pl.'s Dep. 88-90, 98.) Those requests were written by another detainee because Plaintiff had suffered an injury to his right hand from an altercation with an inmate the prior month. That injury was the subject of another case of Plaintiff's and is not

material here except for background.  <u>Bartlett v. Inoue</u>, 15-cv-1466 (C.D. Ill.)(summary judgment granted to defendants on 7/5/17).

On October 8, 2015, Nurse Bonnie Brown (who is not a Defendant) saw Plaintiff about Plaintiff's complaint regarding his thumbs/fingers.  Plaintiff maintains that his fingers were red and swollen, with "pus and stuff oozing out." (Pl.'s Dep. 102.)  Nurse Brown noted mild redness in Plaintiff's right thumb and ordered Epsom salt soaks for four days.  (Pl.'s Dep. 102, 115; 10/8/16 progress note, e/t 36-3, p. 11.)

Plaintiff had gone to other medical appointments between October 2 through October 7, for issues other than this infection.  Plaintiff received dental treatment on October 2, saw the jail physician on October 5 for a check of Plaintiff's hand injury, and saw an orthopedist on October 6 regarding Plaintiff's hand injury.  According to Plaintiff, he mentioned his finger infection at those appointments, but his complaints were ignored because those complaints were not the purpose of the visits.  (Pl.'s Dep. 94-97.)

According to Plaintiff, the Epsom salt did not help and his fingers and thumbs were visibly infected, oozing "stuff." (Pl.'s Dep. 111-112.)  Plaintiff submitted a request form on October 10, 2015,

stating that his finger was purple and infected, his thumb was infected, and he needed antibiotics. (10/10/15 inmate request form, d/e 36-3, p. 24.) That day, Plaintiff showed Officer Daugherty his fingers and thumbs and was of the understanding that Officer Daugherty would report this to the nurse station. <u>Id.</u> Still later that day, Defendant Payne visited Plaintiff, observed Plaintiff's fingers and thumbs, and told Plaintiff that they were not infected enough to see a doctor. <u>Id.</u> (Defendant Payne denies saying this (d/e 36-3), but the Court accepts Plaintiff's version at this stage.) After this visit, Defendant Payne noted "no edema; slight amount of erythema as if pt. may have been picking them; instructed to keep hands clean and don't mess with hangnails." Payne instructed Plaintiff not to bother his hangnails and to leave his hands and fingers alone. (10/10/15 progress note; response to 10/10/15 request form, d/e 36-3, p. 24.) Plaintiff maintains that he had not been bothering his fingers or thumbs and that his thumbs by this time were oozing with pus—"purple, red, green." (Pl.'s Dep. 111; Pl.'s Resp., d/e 38, p. 2.) Plaintiff maintains that Officer Daugherty later expressed to Plaintiff that Defendant Payne had acted unprofessionally during her interaction with Plaintiff on October 10,

but that is inadmissible hearsay, and, in any event, immaterial. (Pl.'s Dep. 113.)

Plaintiff filed a grievance that day (October 10) recounting his interaction with Defendant Payne and asking for the protocol to receive medical treatment. (Inmate grievance form, d/e 36-3, p. 25.) Defendant Payne provided a written response. She denied saying that Plaintiff's fingers were not infected enough to be treated and maintained that "Epsom salts always helps when used as directed." (Resp. to inmate grievance, d/e 36-3, p. 25.) She also wrote that, "If you felt the clippers were not clean, it was your responsibility to write for something to make them sanitary." Id.

Plaintiff says he sent more requests slips about his fingers and thumbs after his October 10 interaction with Defendant Payne. (Pl.'s Dep. 115.) On October 12, 2015, Nurse Brown saw Plaintiff again regarding Plaintiff's fingers and thumbs and this time referred Plaintiff to see the prison doctor, Dr. Valentine. (Pl.'s Dep. 116.) Dr. Valentine saw Plaintiff two days later, diagnosing Plaintiff with acute paronychia, which is an infection along the fingernail or toenail. (Payne Aff. ¶ 49.) Dr. Valentine prescribed an antibiotic for ten days, four times a day. The last two of those doses were not

provided to Plaintiff at the correct times, but Plaintiff was provided with one of the missed doses later that same day, and the second missed dose the next day.² Plaintiff contends that when he first alerted Defendant Payne of the missed dose, that Payne replied, "Write a grievance then." According to Plaintiff, at some point a second round of antibiotics was prescribed to clear up the infection, though Plaintiff does not point to medical records to support that assertion. (Pl.'s Dep. 120, 125-26, 151-52.)

Defendant Winans, the Jail Supervisor at the time, avers that no inmate had complained to him about the cleanliness of the nail clippers before Plaintiff filed his grievance after the incident. Winans further avers that he addressed Plaintiff's concerns expressed in Plaintiff's grievance by directing that nail clippers in the future be stored in disinfectant solution (Barbicide). The nail clippers are now stored in disinfectant solution. (Winans Aff. ¶¶ 61-68.)

---

² Plaintiff said in his deposition that he only received his antibiotics only three times a day and did not even know that he was to receive them four times a day until told by defense counsel. (Pl.'s Dep. 118-120, 126.) However, these statements are directly contradicted by Plaintiff's statement in his grievance that "Dr. had prescribed this for 4x/day for ten days." (d/e 36-3, p. 20.)

**Analysis**

**I. Nail Clipper Claim**

Plaintiff argues that the clippers should have been placed in disinfectant solution all along. He also contends that detainees should have been allowed to buy their own clippers as they can in the Illinois Department of Corrections. (Pl.'s Resp., d/e 38, p. 13.)

Those may both be good ideas, but that is not the question. The question is whether the dirty nail clippers provided to Plaintiff posed a substantial risk of serious harm to Plaintiff, and, if so, whether Defendants were deliberately indifferent to that risk. Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008)(analyzing civil detainee's condition of confinement claim using Eighth Amendment standard); Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005)("[W]e have found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'")(quoted cite omitted).[3]

---

[3] The Seventh Circuit Court of Appeals has not addressed whether the Supreme Court case of Kingsley v. Hendrickson, 135 S.Ct. 2466 (2015), which applied an objective standard to a detainee's excessive force claim, applies to a detainee's medical claim. Collins v. Al-Shami, 851 F.3d 727, 731 (7th Cir. 2017). As of this writing, the deliberate indifference standard appears to still apply. *See* Phillips v. Sheriff of Cook County, 828 F.3d 541 n. 31 (7th Cir. 2016).

The answer to the second part of that question (whether Defendants were deliberately indifferent) obviates the need to answer the first part of that question (whether the dirty nail clippers posed a substantial risk of serious harm). No rational juror could find that Defendants were deliberately indifferent.[4] Defendant Winan's understanding was that Clorox wipes were available to clean the clippers, and Winans had no knowledge of any grievances about the clippers until Plaintiff filed a grievance *after* he contracted an infection. Plaintiff had been given wipes to clean the clippers on prior occasions and had experienced no problems. Additionally, Plaintiff had soap and water in his cell to clean the clippers. There is no evidence that Defendants knew *before* Plaintiff's infection that Plaintiff had been provided dirty nail clippers or that the Jail's practice regarding nail clippers might present a substantial risk of spreading infection.[5] [6]

There is also no evidence that either Defendant was involved in refusing Plaintiff's requests for cleaning solutions. The

---

[4] The Court construed this claim against only Defendant Winans, but the Court refers to both Defendants because Plaintiff argues that Defendant Payne was somehow responsible for not providing the cleaning solution.
[5] Defendants argue that Plaintiff has not proven that the dirty nail clippers caused his infection. The Court does not address this argument because, in any event, Defendants were not deliberately indifferent.
[6] Plaintiff asserts that other detainees were given dirty nail clippers too, but he does not offer any evidence that any other detainees contracted infections from using those clippers.

unidentified officers, who are not named as defendants, did that. Defendants cannot be constitutionally liable for their employees' actions solely because Defendants were in charge. Brown v. Randle, 847 F.3d 861, 865 (7th Cir. 2017)("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). Plaintiff seems to argue that Defendants are liable because his infection could have been avoided, but the Constitution is not a strict liability statute. *See* Rosario v. Brawn, 670 F.3d 816, 822 (7th Cir.2012)("We do not require perfection. . . . Rather, we require . . . 'something approaching a total unconcern . . . .'")(citation omitted).

Plaintiff also argues that Defendant Winans' decision to store the clippers in Barbicide after Plaintiff's grievance is an admission of liability. Improvements in procedures after learning of potential problems is not deliberate indifference. Remedial measures taken after an injury are not admissible to prove culpability. Fed. R. Evid. 407.

## II. Medical Treatment Claim

Plaintiff claims a delay in the diagnosis and treatment of the infection in his thumbs and fingers. However, the only medical

professional named as a Defendant is Defendant Payne.  Plaintiff offers no evidence that Payne knew about Plaintiff's purported requests for treatment that Plaintiff says went answered.  Nor is there evidence that Defendant Payne was responsible for Nurse Brown's decision on October 8 to first treat Plaintiff with Epsom salts.  There is no respondeat superior liability under the Constitution.  <u>Brown v. Randle</u>, 847 F.3d at 865.

Defendant Payne's personal involvement in Plaintiff's care began on October 10, halfway between the four-day Epsom salts treatment prescribed by Nurse Brown.  On October 10, Payne looked at Plaintiff's hands, observed no swelling (edema) and observed a slight redness in Plaintiff's skin (erythema).  Plaintiff, on the other hand, describes his hands as purple, red, green, and oozing with pus.

Even accepting Plaintiff's description over Payne's, Plaintiff offers no evidence that Defendant Payne failed to exercise her medical judgment in determining that Plaintiff should give the Epsom salts more time to work before referring Plaintiff to the

doctor.[7] Plaintiff doesn't challenge that Epsom salts are an accepted form of initial treatment. His complaint that the Epsom salts were not working does not rise to deliberate indifference here, where Plaintiff had only been trying the Epsom salts for two days. Perhaps Defendant Payne's assessment to continue with the Epsom salts was incorrect, but medical malpractice does not become a constitutional violation when committed by a government actor. *See* Cesal v. Moats, 851 F.3d 714, 725 (7th Cir. 2017)(There is an "important difference between ordinary, or even aggravated, medical malpractice, and an Eighth Amendment violation."). No rational juror could find that Defendant Payne's decision was "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Sain v. Wood, 512 F.3d 886, 893 (7th Cir. 2008).

Plaintiff also contends Defendant Payne should be held liable for Plaintiff's two missed doses of antibiotics, which occurred at the

---

[7] The Court infers from Nurse Brown's referral of Plaintiff to the doctor on October 12 that Defendant Payne could have referred Plaintiff to the doctor on October 10. Plaintiff seems to assert that he could not be scheduled for an appointment with the doctor without a referral from a nurse. For purposes of this order only, the Court accepts that assertion as true.

end of the 10-day prescription period. Plaintiff does not offer evidence which might allow a reasonable inference that Defendant Payne was personally responsible for the missed doses. Defendant Payne promptly ensured that Plaintiff received the doses after Plaintiff filed his grievance, and there is no evidence that Plaintiff suffered any harm from the delay. Nor is there evidence that these missed doses were anything other than ordinary mistakes, which are not constitutional violations. Zentmyer v. Kendall County, 220 F.3d 805 (7th Cir. 2000)("[D]eliberate indifference is an onerous standard for the plaintiff, and forgetting doses of medicine, however incompetent, is not enough to meet it here.")

**IT IS ORDERED:**

**(1)** Defendants' motion for summary judgment is granted (d/e 36.) The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff and to close this case.

**(2)** Defendants may file a motion for costs within the time allotted by Local Rule. If Plaintiff objects to the assessment of costs based on indigency, he must file a timely objection and attach his trust fund ledgers for the past year. Plaintiff has the burden of showing that he is incapable of paying the costs at this time or in

the future. Rivera v. City of Chicago, 469 F.3d 631, 634 (7th Cir. 2006).

**(3)** If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTER: 1/4/2018

FOR THE COURT:     ___**s/James E. Shadid**___
                                       JAMES E. SHADID
                                       UNITED STATES DISTRICT JUDGE